JACK RUSSO (State Bar No. 96068)
CHRISTOPHER SARGENT (State Bar No. 246285)
COMPUTERLAW GROUP LLP
401 Florence Street
Palo Alto, CA 94301
Telephone: (650) 327-9800
Facsimile: (650) 618-1863
E-mail: jrusso@computerlaw.com
        csargent@computerlaw.com

Attorneys for Plaintiff
GROUPION, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GROUPION, LLC a California limited liability company,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>GROUPON, INC., a Delaware corporation, THE POINT, INC., a Delaware corporation, and, GOOGLE, INC., a Delaware corporation,<br><br>　　　　　Defendants. | Case No.  3:11-cv-00870-JSW<br><br>**PLANTIFF'S REPLY TO DEFENDANT GROUPON'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR PRELIMINARY INJUNCTION AGAINST GROUPON, INC.**<br><br>Before:　The Hon. Jeffrey S. White<br>Date:　　November 4, 2011<br>Time:　　9:00 A.M. |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I. DEFENDANT GROUPON'S INCONSISTENT REASONING MUST BE REJECTED ..... 2

    A. Defendant Makes Contradictory Arguments Throughout Its Opposition ................... 2

    B. GROUPON Repeatedly Side-Steps Plaintiff's
Arguments and Makes Misleading Assertions ......................................................... 4

    C. No Double Standard Should Be Applied in This Court's
Interstate Commerce Analysis as GROUPON Is Now Seeking ................................. 5

II. SUMMARY JUDGMENT IS APPROPRIATE DUE TO
GROUPION'S PRIORITY AS A MATTER OF LAW UNDER SECTION 44 .................... 5

    A. The Indisputable § 44 Priority Date For GROUPION is November 27, 2008 ............ 6

    B. Defendant's November 2008 Priority Date is for Class 35 Only ............................... 8

    C. Plaintiff's Priority Rights Clearly Trump Defendant's
For the Areas Claimed In Plaintiff's Section 44 Registration ..................................  8

    D. Defendant Is Infringing, as a Matter of Law, on Plaintiff's Rights ........................... 10

        1. GROUPON Is Aggressively Seeking
Employees To Engineer Its Software Products .............................................. 11

        2. GROUPON Has Recently Applied to Add
"Software" and "Marketing" Products To Its USPTO Trademarks ................ 11

III. PRELIMINARY INJUNCTIVE RELIEF IS APPROPRIATE IN THIS CASE .................... 12

IV. NO BOND IS NEEDED HERE GIVEN THE LIMITED
SCOPE OF THE INJUNCTIVE RELIEF REQUESTED ....................................... 14

    A. Defendant Can Continue to Use Its Mark
For its Web Marketing Services to Its Consumer Customers..................................... 14

    B. Defendant Cannot Use its Mark for Mobile or
Software Products or Services for Merchants............................................................ 14

    C. No Bond Is Necessary In the Present Case............................................................. 14

CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

Brookfield Commns, Inc. v. West Coast Entm't Corp.,
   174 F.3d 1036 (9th Cir. 1999) ................................................................................. 13

Crocker National Bank v. Canadian Imperial Bank of Commerce,
   223 USPQ 909 (TTAB 19840029 ............................................................................. 6

Federal Trade Commission v. Equifin International,
   1997 U.S. Dist. LEXIS 10288 ................................................................................. 14

Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,
   571 F.3d 873 (9th Cir. 2011). .................................................................................. 13

Marmark Ltd. v. Nutrexpa S.A.,
   12 USPQ2d 1843 (TTAB 1989) ................................................................................ 9

Network Automation, Inc. v. Advanced Sys. Concepts,
   638 F.3d 1137, 1142 (9th Cir. 2011) ....................................................................... 13

Pharma. Soc'y, Inc. v. N.Y. State Dep't of Soc. Servs.,
   50 F.3d 1168, 1174-75 (2d Cir. 1995) ..................................................................... 14

Societe Generale des Eaux Minerales de Vittel S.A.,
   USPQ2d 1296 (TTAB 1986), rev'd on other grounds,
   824 F.2d 957, 3 USPQ2d 1450 (Fed. Cir. 1987) ....................................................... 9

**Statutes**

15 U.S.C. § 1126 ............................................................................................................ 6, 9

15 U.S.C. §§1051(a)(2) .................................................................................................... 8

15 U.S.C. §§ 1051(b)(2) ................................................................................................... 8

15 U.S.C. 1052(d) ............................................................................................................. 9

37 C.F.R. 2.32(a)(6) .......................................................................................................... 8

TMEP, § 1001 et seq. .................................................................................................... 1, 6

TMEP § 1002.03 ............................................................................................................... 6

TMEP, § 1003 ................................................................................................................... 6

TMEP §1402.01 ............................................................................................................ 8, 9

TMEP §1402.06 ..................................................................................................................

Federal Rules of Evidence, Rule 702 .......................................................................................... 13

F. R. C. P. 56(c) ............................................................................................................................ 13

F.R.C.P. Rule 65 ..................................................................................................................... 14, 15

## INTRODUCTION

Can a Defendant who admits factually that it does not engage in any of the areas set forth in Plaintiff's federally registered trademark also simultaneously deny that said Plaintiff is entitled to priority as a matter of law? The answer is: of course not. However, here, Defendant GROUPON attempts (falsely) to convince this Court that it has nothing to do with any of the areas of exclusivity established by Plaintiff GROUPON's federal trademark registration and yet argues at the same time that GROUPION is not entitled to priority under the Lanham Act. This is nonsense; accordingly, Defendant's Opposition should be rejected for this reason alone and also for *two* other reasons.

First, all of GROUPON's arguments are *entirely* contradictory. It recognizes GROUPION as owner of federal trademark rights that date at least November 2008 in multiple areas of exclusivity, but vehemently opposes any form – even the most limited form -- of court order enjoining it from marketing or selling Customer Relationship Management (CRM) and software products; yet concomitantly claims it has not yet entered and does not (yet) market or sell such products. Similarly, GROUPON's repeated and unsubstantiated complaint that Plaintiff has injuriously "delayed" the filing of this motion is belied by GROUPON requesting further delay to take more discovery if the Court is "inclined" to grant Plaintiff relief. See Wakefield Decl., ¶46. This paradoxical and circular reasoning – meant only to distract – resonates throughout the Opposition.

The second reason that the Court should disregard GROUPON's Opposition is pivotal and entirely central to this case – namely, Plaintiff has *indisputable* trademark protection in the United States under federal trademark law and federal treaty law[1] regarding the goods and services claimed in its Section 44 U.S. trademark registration. There is – and *can be* – no refutation by GROUPON of this key fact: Defendant has moved into the area of providing software tools to its merchant-customers to manage their customers' "Groupons" (among other exclusive areas of use owned by Plaintiff based on its federally protected trademark rights).

---

[1] Section 44 of the Lanham Act implements provisions of multiple treaties entered with multiple countries including those in the European Union that trademark rights be extended to foreign nationals and that the priority date established by registration in one or more countries in the European Union (such as the registration in Germany in this case) has the minimum effect of assuring a priority date for that registration in the United States of America and without prejudice to the earlier dates of usage by the trademark owner. See TMEP, § 1001 *et seq*.

Indeed, *all* analysis of this case should and must be within the framework of Plaintiff's indisputable Lanham Act Section 44 exclusive rights, and such analysis can lead to only one conclusion: the Court should and must order protection of those rights, the minimum remedy being a properly-tailored preliminary injunction in the areas where no dispute can or should exist – *i.e.*, the specific areas of the goods and services claimed by Plaintiff's Section 44 registration. In addition, the Court should declare based on the undisputed facts in this case that Plaintiff is the owner of all exclusive rights in the multiple areas of exclusivity set forth in its federal trademark registration and such exclusivity attached and continues from the November 27, 2008 priority date to the present. Thus, Defendant GROUPON is not entitled to invade or otherwise infringe any of these areas of exclusivity and appropriate summary judgment and declaratory relief remedies are fitting given Plaintiff's indisputable trademark rights under the Federal Lanham Act and under relevant Federal Treaty Law and Plaintiff respectfully requests that such relief be ordered.[2]

## ARGUMENT

### I. DEFENDANT GROUPON'S INCONSISTENT REASONING MUST BE REJECTED.

#### A. Defendant Makes Contradictory Arguments Throughout Its Opposition.

GROUPON's thematic contradictions – whereby it makes one argument, belying it with yet another – are endemic in the Opposition. Case in point, GROUPON repeatedly contends that it does not market, sell or develop CRM or other software products. GROUPON's own Vice President of Operations declares that "GROUPON does not offer any kind of CRM software" and, moreover, that GROUPON has "no plans to offer commercial software, such as CRM or 'business groupware,' in the future." (See Declaration of Nick Cioffi in Support of Defendant Groupon's Opposition ("Cioffi Decl."), ¶ 54). In attempting to distinguish its admissions to the contrary published at GROUPON's www.grouponworks.com website from any CRM software, mobile software or other software as a service tools, GROUPON argues: "Participation in today's mobile internet "sector" is almost as ubiquitous as the desktop internet … That a Groupon customer with an iPhone can now find a good deal on a nearby shop in no way suggests that Groupon is about to launch into business software."

---

[2] GROUPION LLC is a duly organized limited liability company and owner of the U.S. Trademark Registration and all accrued trademark rights in this case; there is no evidence to the contrary submitted by Defendant.

GROUPON knowingly misses the point.  Plaintiff is not seeking to enjoin GROUPON from offering phone applications to its coupon-buying customers.  To the contrary – Plaintiff has identified specific examples of when, where and how GROUPON has already moved into CRM software and software-as-a-service by offering its <u>merchant</u>-customers software tools to manage their customers' use of GROUPON coupons and their own marketing campaigns – the *definition* of customer relationship management.  Yet, GROUPON tries to "spin" Plaintiff's arguments as focusing on GROUPON's coupon-purchasing end-user customers, which they plainly do not.  GROUPON cannot deny to this Court its recent moves to provide computer software, software-as-a-service and other products and services to its <u>merchant</u>-customers.

Revealingly, despite its arguments that there is no activity or interest in the critically-relevant area of software and CRM products, GROUPON argues strenuously against any court order enjoining GROUPON from marketing or selling those very products and services.  GROUPON asserts that "Plaintiff effectively seeks a shutdown of Groupon's use of its brand, and the name of the product it sells—*i.e.*, Groupons. Such a restriction would be devastating." (<u>See</u> Opposition, 24:8-9). Despite GROUPON's asserted "doomsday" predictions, Plaintiff (as noted in Attorney Jack Russo's Declaration in Support of GROUPION's motion) offered months ago to stipulate to an injunction whereby GROUPON would simply agree to not offer the goods and services listed in Plaintiff's trademark registration (the scope of the proposed injunction taken from GROUPION's Section 44 trademark registration). Tellingly, GROUPON totally ignored and **did not even respond** at all to the offer – evidencing a contrary and strikingly less alarmist reaction only months ago.[3]

If, as GROUPON contends, it offers no CRM or other software products or services to merchants and intends to offer no such products, how then is Plaintiff's request for an injunction to keep GROUPON out of CRM and other customer relationship software an "*in terrorem*" tactic, as GROUPON exaggeratedly argues?  Why does it attempt now to make the case that any such Order would "devastate" its business?  The answer is clear: It is **because GROUPON *does* offer such**

---

[3] Plaintiff has made no monetary demand in this case; indeed, Plaintiff has simply and repeatedly requested that Defendant avoid confusion and avoid the likelihood of confusion by stipulating to discontinue use and to non-use of GROUPON in each of the seventeen (17) areas of exclusivity set forth in the U.S. Trademark Registration owned by Plaintiff. <u>See</u> Declaration of Jack Russo at Paragraphs 1-5 & Exhibits 1-3 thereto.

**products and has plans to further expand into the area exclusively held by GROUPION**, as further described in Plaintiff's original moving papers and as further explained in this Reply.

### B. GROUPON Repeatedly Side-Steps Plaintiff's Arguments and Makes Misleading Assertions.

GROUPON's contradictions are, at best, insincere attempts to resist Plaintiff's appropriate requests; in so doing, the Court must question the good faith and the credibility of GROUPON's remarks given multiple factually-inaccurate positions, *viz*:

GROUPON *argues*: "[A]t the time Groupon launched its website, *Plaintiff was not even called 'Groupion.'*" (See Opposition, 2:10-11). This is plainly incorrect—as explained in Plaintiff's Motion, the GROUPION "Essentials – User Manual," which the founders disseminated to registered customers in early 2008, is titled "**Groupion**" (with a footer inserted on every page, www.groupion.net), providing links for Groupion Support/Education Resources (www.groupion.net), online/phone assistance (forum.groupion.net) and available support (support.groupion.net). See Declaration of Peter-Cristoph Haider in Support of Motion for Summary Judgment and for Preliminary Injunctive Relief ("Haider Decl."), Exh. 13.

GROUPON *argues* "Plaintiff cannot establish priority of use to Groupion, as neither it nor its product were called 'Groupion' at the time Groupon launched." See Opposition, vii: 19-20. In fact, the Groupion Product Change Log, a 29-page log of technical specification changes from 2007-2011 (produced on July 15, 2011), enumerates forty-one (41) separate versions of software titled "**Groupion**" ranging from "Groupion 4.101" (released online October 1, 2010), to "Groupion 2.001" (released online July 3, 2007). See Declaration of Benjamin Coutu in Support of Reply to Opposition to Motion for Summary Judgment and for Preliminary Relief ("Coutu Reply Decl."), Exh. 1.

Plaintiff here asks for nothing more than enforcing its indisputable trademark rights and to enjoin GROUPON – an aggressive company clearly skilled at and intent on vertical integration[4] – from infringing its exclusive market. Misleading assertions fail to change this.

//

---

[4] Plaintiff's founder Peter Haider describes "vertical integration" as "tak[ing] over a new area of business by providing existing customers with additional products and services that directly relate to what the company is offering." (Haider Decl., at 13:17-18).

### C. No "Double Standard" Should Be Applied in This Court's Interstate Commerce Analysis as GROUPON is Now Seeking.

The same standards must apply in determining when GROUPION's and GROUPON's products and services were in interstate commerce, but GROUPON instead attempts to apply a new "double standard" whereby GROUPON's Internet advertising counts but GROUPION's Internet usage does not. This too is nonsense. First, GROUPON argues that "Groupon was offering deals 'in commerce' as required for a trademark registration from its very first offer on October 21, 2008." See Opposition, 2:18-20. This assertion relies on the following definition of "interstate commerce":

> *First*, 15 U.S.C. § 1127 defines "commerce" as "all commerce which may lawfully be regulated by Congress." This does not require services to be delivered in multiple states, or across state lines. *See Lary Harmon Pictures Corp. v. Williams Rest. Corp.*, 929 F.2d 662 (Fed. Cir. 1991) (single-location restaurant satisfied use in commerce requirement). *Second*, under any definition of "commerce," Groupon's earliest activities met it. From its very first deal, Groupon was using its mark with deals that, although redeemable in Chicago, were promoted nationally and appealed to out of state residents. Cioffi ¶¶ 7-14. Within days of its October 21 launch, Groupon's website had been visited by people from all over the country. (See Opposition, 22:1-8).

GROUPON then continually argues that it has priority over Plaintiff's actual use "in commerce" in the United States because GROUPION was not in use in interstate commerce. However, "GROUPION" was the advertised name for its software products long before GROUPON came into existence and **GROUPION clients in the United States registered the "GROUPION" products from early 2008 forward**. (Haider Decl., Exh. 7). Thus, under any definition of actual use "in commerce" – and especially under GROUPON's definition– Plaintiff's actual use within United States took place months (if not over a year) before GROUPON even came into existence and such continuous use more than supports the multiple areas of exclusivity established by the filing of the Section 44 registration in the United States. On this latter point, GROUPON has no real reply.

### II. SUMMARY JUDGMENT IS APPROPRIATE DUE TO GROUPION'S PRIORITY AS A MATTER OF LAW UNDER SECTION 44.

GROUPON extensivly challenges GROUPION's evidence of actual use in the United States in 2007 and 2008 of the "GROUPION" trademark (trying to create a "genuine" issue of material fact), but expends little effort to match Plaintiff's principal – indeed, legally *indisputable* – argument: that is, **as a matter of law** under the terms of Section 44 of the Lanham Act, Plaintiff's December 22,

2008, trademark registration establishes legal priority in the goods and services claimed in the registration from its November 27, 2008 priority date and that **Plaintiff has an *indisputable* right to exclusivity in the use of its trademark in these exclusive areas.**

Even if it is assumed (incorrectly and solely for sake of argument) that there was no evidence demonstrating Plaintiff's use of its trademark in commerce in 2007 and 2008 in the United States (which, of course, is not the case), Plaintiff has priority as matter of law from its November 27, 2008 priority date to the present in each and every one of the exclusive areas arising from its U.S. trademark registration pursuant to Section 44 of the Lanham Act. This key fact is explained throughout GROUPION's Motion; it is almost entirely ignored by GROUPON in this case.

Thus, **entirely distinct** from any factual dispute regarding GROUPION's first actual use of its mark in the U.S. is the indisputable fact that GROUPION has priority as a matter of law in under its Section 44 Trademark Registration and those areas of exclusivity continue from November 27, 2008 to the present. Indeed, Defendant's continual **denial** of activity within the areas of CRM and software supports Plaintiff's claim of exclusivity because GROUPON has no rights in an area that it has not legally claimed or used its trademark in nor can it now attempt to do so given Plaintiff's rights.

### A. The Indisputable § 44 Priority Date for GROUPION is November 27, 2008.

Section 44(d) of the Trademark Act, 15 U.S.C. § 1126(d), provides for a trademark priority filing date to eligible applicants that have filed an application in a treaty country as defined by Section 44(b). Trademark of Examination Procedures (TMEP) §1002.03. If an eligible applicant files the U.S. application claiming Section 44(d) priority within six months of filing the first application to register the mark in a treaty country, the filing date of the first-filed foreign application is the effective filing date of the U.S. application. See TMEP, § 1003. Although Section 44 applicants must assert a *bona fide* intention to use the mark in commerce, Section 44 applicants do not have to allege any use or even provide any specimens or dates of use prior to registration on the Principal Register in an application based solely on Section 44. Crocker National Bank v. Canadian Imperial Bank of Commerce, 223 USPQ 909 (TTAB 1984). This is all in accord with Federal Treaty Law which Section 44 implements for the protection of foreign nationals. See TMEP §1001 *et seq.*

As noted in Plaintiff's Motion, Plaintiff has priority via its Section 44 registration in the United States (and exclusive rights pursuant to its valid registration) in each and every one of the following seventeen (17) areas (numbers added in brackets for clarity):

- Class IC 009. US 021 023 026 036 038. G & S: [1] Computer application software for mobile phones; [2] Computer e-commerce software to allow users to perform electronic business transactions via a global computer network; [3] Computer software for use in customer relationship management (CRM); [4] Computer software that provides web-based access to applications and services through a web operating system or portal interface; [5] Computer software, namely, software development tools for the creation of mobile internet applications and client interfaces;

- Class IC 042. US 100 101. G & S: [6] Application service provider (ASP), namely, hosting computer software applications of others; [7] Application service provider, namely, providing, hosting, managing, developing, and maintaining applications, software, web sites, and databases in the fields of personal productivity, wireless communication, mobile information access, and remote data management for wireless delivery of content to handheld computers, laptops and mobile electronic devices; [8] Computer software consultancy; [9] Computer software design; Computer software design for others; [10] Computer software design, computer programming, or maintenance of computer software; [11] Computer software development; Computer software installation and maintenance; [12] Computer software rental; [13] Consultancy in the field of software design; [14] Customization of computer hardware and software; [15] Customized software development services; [16] Design and development of computer software; [17] Design of home pages, computer software and web sites. (See Haider Declaration, Exhibit 16).

Plaintiff filed its USPTO application pursuant to Section 44(d) on December 22, 2008, relying on its European trademark application filed on November 27, 2011. (See Haider Decl., Exhs. 15 and 16). The European claims of goods and services claimed by Plaintiff provided over fifty (50) specific goods and service classes, upon which the U.S. application was based:

- Nice Classification 9, G & S: Scientific, nautical, surveying, photographic, cinematographic, optical, weighing, measuring, signaling, checking (supervision), life-saving and teaching apparatus and instruments; apparatus and instruments for conducting, switching, transforming, accumulating, regulating or controlling electricity; apparatus for recording, transmission or reproduction of sound or images; magnetic data carriers, recording discs; automatic vending machines and mechanisms for coin-operated apparatus; cash registers, calculating machines, data processing equipment and computers; fire-extinguishing apparatus.

- Nice Classification 35, G &S: Advertising; business management services; business administration; office functions.

- Nice Classification 42,  G & S: Scientific and technological services and research and design relating thereto; industrial analysis and research services; **design and development of computer hardware and software (emphasis added).**

Not only does Plaintiff's broad European application clearly cover the items specifically noted in the United States application (pursuant to Lanham Act, Section 44), it specifically includes

the relevant categories of "business management services," "scientific and technological services and research…" and, of utmost importance, **design and development of computer hardware and software**. There can be no question that Plaintiff's trademark registration is valid, subsisting, and continuing from its November 27, 2008 priority date to the present.

### B. Defendant's November 2008 Priority Date is for Class 35 Only.

Defendant GROUPON's original trademark registration does not include any goods or services even remotely similar to Plaintiff's:

- (GROUPON) IC 035. US 100 101 102. G & S: promoting the goods and services of others by providing a website featuring coupons, rebates, price-comparison information, product reviews, links to the retail websites of others, and discount information.

This description encompasses none of the services offered by Plaintiff – *e.g.,* there is no inclusion or reference whatsoever to software, software products, campaign management software, coupon management software, software as a service or customer management tools. Yet, as described in Plaintiff's original Motion (and herein), GROUPON has clearly moved into these areas.

### C. Plaintiff's Priority Rights Clearly Trump Defendant's For the Areas Claimed In Plaintiff's Section 44 Registration.

Defendant truly misses the mark when it attempts to argue that "Plaintiff's U.S. registration improperly claimed rights in connection with goods or services not claimed in its European trademark registration." (See Opposition, 6:20-22). This argument is without any legal or reasonable basis, is contrary to the facts, and **it is contrary to federal law**.

A written application must specify the particular goods or services on or in connection with which the applicant uses, or has a *bona fide* intention to use, the mark in commerce. 15 U.S.C. §§1051(a)(2) and 1051(b)(2); 37 C.F.R. 2.32(a)(6). To "specify" means to name in an explicit manner. The identification of goods or services should set forth common names, using terminology that is generally understood. See TMEP §1402.01. The language used to describe goods or services should be understandable to the average person and should not require an in-depth knowledge of the relevant field. An identification may include terms of art in a particular field or industry, but, if these terms are not widely understood by the general population, the identification should include an explanation of the specialized terminology. TMEP §1402.01.

Under the TMEP, with few exceptions, an identification of goods and services will be acceptable if it: (1) is written in English; (2) describes the goods and/or services so that an English speaker could understand what the goods and/or services are, even if the grammar or phrasing is not optimal; (3) meets the standards (not necessarily the language) set forth in the Acceptable Identification of Goods and Services Manual; (4) is not a class heading; and (5) is in the correct class. See TMEP §1402.06  Furthermore, **deference should be given** to the language and the classification set forth by the applicant in the original application. See TMEP §1402.01(a).  The identification of goods and services in an application based on Section 44, 15 U.S.C. 1126, must comply with the same standards that govern other applications. The applicant must identify the goods and services specifically to enable the Office to classify the goods and services properly and to reach informed judgments concerning likelihood of confusion under 15 U.S.C. 1052(d).  See TMEP §1402.01(b).

Foreign registrations will often include broad statements of the identification of goods and services and the identification of goods or services in the United States application must be definite and specific even if the foreign registration includes a broad identification.   See In re Societe Generale des Eaux Minerales de Vittel S.A. 1 USPQ2d 1296, 1298 (TTAB 1986), *rev'd on other grounds*, 824 F.2d 957, 3 USPQ2d 1450 (Fed. Cir. 1987).  Thus, in an application based on Section 44 of the Trademark Act, the identification of goods and services covered by the Section 44 basis in the United States application may not exceed the scope of the goods and services identified in the foreign registration. Marmark Ltd. v. Nutrexpa S.A., 12 USPQ2d 1843 (TTAB 1989).

The TTAB case, Marmark, Ltd.  v. Nutrexpa, S.A., 1989 TTAB LEXIS 68; 12 U.S.P.Q.2D (BNA) 1843, is instructive and illustrates the way the TTAB interprets Section 44 registrations from European applicants.  In Marmark, a Spanish company claimed the following in its European application: "Spanish goods: 'Any kind of foodstuff, - canned fish, shellfish and pickles, sauces, seasonings and spices; except any cheese, butter and casein.'"  The company's claimed goods and services in its U.S. application were: "United States goods: "Chocolate, cocoa, strawberry and vanilla flavored milk based beverages."  The court noted that "when an application is based upon Section 44 of the Lanham Trademark Act of 1946 (as is applicant's), the description of goods in the United States application cannot include goods which are not included in the description of goods in the

foreign registration upon which the U.S. application is based." Id., at 1845.  The Court then explained:

> If the words in the Spanish registration "any kind of foodstuff" meant all foodstuffs (except for cheese, butter and casein), there would simply be no need to enumerate "canned fish, shellfish and pickles, sauces, seasonings and spices." Construing narrowly the description of goods set forth in the Spanish registration, we find that this description is limited to canned fish, shellfish and pickles, sauces, seasonings and spices (except cheese, butter and casein). Id., at 1845.

Thus, the Court looked to whether the original Spanish application specifically enumerated goods to determine the inclusiveness of the claim.

In the present case, Plaintiff's European application for "Groupion" was already narrow, including the goods and services specific to the area of the "design and development of computer hardware and software."  Plaintiff's U.S. Section 44 application implemented this already-narrow, specific area of goods and services and enumerated numerous detailed and precisely-described areas of goods and services, all falling within the claimed categories of the European registration.

Applied to the present case, Plaintiff unquestionably has valid priority rights pursuant to its December 22, 2008, Section 44 registration.  Plaintiff's European application (on which Plaintiff's Section 44 registration is based) is worded specifically and inclusively, while Plaintiff's U.S. application lists many specific areas of software, mobile software, Internet software, CRM software, software as a service and Application Service Provider areas – none of which GROUPON was doing in 2008 (when it admits it just began and had few customers) but which GROUPON is now doing in 2011 (when GROUPON has millions of end-user customers and tens of thousands of merchant customers).  Is GROUPON truly saying that as a company about to offer an initial public offering (IPO) to the public that it has no intent to provide computer software and software-as-a-service to its huge base of merchant customers?

**D.     Defendant Is Infringing, as a Matter of Law, on Plaintiff's Rights.**

A review of GROUPON's current actions leads to only one conclusion: GROUPON has recently undertaken aggressive action to move into CRM and software as a service for its merchant customers and is blatantly infringing on Plaintiff's exclusive rights.

### 1. GROUPON Is Aggressively Seeking Employees To Engineer Its Software Products.

For example, GROUPON is hiring in the area of software engineering and development and posted jobs for "software engineers" in September 2011, including jobs for "Mobile Software Engineer – Web Apps," "Software Engineer – API" (i.e., "Application Programming Interface," an area *specifically* listed in Plaintiff's §44 registration under Class 42), "Software Engineer – Technical Support" (where the position includes "building and maintaining an efficient, elegant, scalable software product…"), and "Software Engineer – Web App Developer" (in which GROUPON makes the claim that "We (proudly) invented the white-hot social commerce business ***and are (humbly) the world leader in local e-commerce platforms.***"). See Coutu Reply Decl., Exh. 2, a compilation of sixteen software engineer job advertisements by GROUPON in September 2011) (emphasis added).

### 2. GROUPON Has Recently Applied to Add in "Software" and "Marketing" Products To Its USPTO Trademarks.

Beyond the admissions on its web site, and even beyond those set forth in its federally filed S-1, and despite it repeated assertions that it its merchant-tools are "are not general business tools or software products"[5] – GROUPON has recently sought to **add** software-related goods to its family of "GROUPON" trademark registrations. The original application for "GROUPON NOW," claiming first use in commerce of May 20, 2011, applied for by GROUPON on January 12, 2011 (and assigned Registration Number 4010592 on August 9, 2001) claimed only the following:

- IC 035. US 100 101 102. G & S: Promoting the goods and services of others by providing a website featuring coupons, rebates, price-comparison information, product reviews, links to the retail websites of others, and discount information.

In a *second* application, filed on March 22, 2011, GROUPON applied for:

- IC 009. US 021 023 026 036 038. G & S: **computer application software for mobile digital devices**, namely, **software** that allows users to access coupons, rebates, price-comparison information, product reviews, links to the retail websites of others, and discount information (emphasis added)

- IC 035. US 100 101 102. G & S: promoting the goods and services of others by providing a website featuring coupons, rebates, price-comparison information, product reviews, links to the retail websites of others, and discount information; advertising and marketing services, namely, promoting the brands, goods and services of others; **arranging online sales campaigns for business and advertising**

---

[5] See Cioffi Decl. Para. 33.

   **purposes of others; planning and management for marketing, promoting or advertising the goods and services of others** (emphasis added)

- IC 041. US 100 101 107. G & S: electronic publication of information relating to the products and services of others, namely, price-comparison information, product reviews and discount information

The "*others*" referenced in the application are clearly GROUPON's merchant-customers. This demonstrates that GROUPON clearly intends to use (and in fact has already used) the "GROUPON" trademark in areas belonging exclusively to Plaintiff. GROUPON cannot possibly in good faith contend that "Groupon has never offered marketing campaign software of any kind…"[6], given that it has recently amended its trademark application claims to specifically include **"software" goods designed to "arrange" online sales and advertising campaign for other companies.**

In sum, Plaintiff's Section 44 priority-date of November 27, 2008 unquestionably trumps GROUPON's later dates in 2010 and 2011 for Classes 9 and 42 and prohibits GROUPON from using a confusingly-similar trademark in these areas. As a matter of law, GROUPON cannot offer goods or services in classes 9 or 41 in the United States – yet that is exactly what it is doing and trying to do.

### III.    PRELIMINARY INJUNCTIVE RELIEF IS APPROPRIATE IN THIS CASE.

Plaintiff's requested injunction is appropriate for at least three incontrovertible reasons. First, no license or other permission was granted by Plaintiff to GROUPON to market or sell products in the category of Plaintiff's established (and indisputable) federal trademark rights. GROUPON never asked for, nor did it receive, such permission and no license or other consent was given.

Second, at the very least, tailored injunctive relief is appropriate to uphold Section 44 and the superiority of applicable Treaty Law. If, as GROUPON repeatedly and steadfastly contends, it is not selling or marketing such software products there can be no harm whatsoever from a tailored injunction protecting the seventeen (17) exclusive areas within Plaintiff's Federal Trademark Registration. Such a crafted preliminary injunction would protect Plaintiff's legal rights and prevent irreparable injury to Plaintiff.

Third, Defendant's analysis under Sleekcraft is entirely erroneous. In the Ninth Circuit, once trademark infringement is demonstrated (as is the case by the actual confusion evident in this case),

---

[6] See Opposition 11:9.

1   irreparable injury is presumed and exists as a matter of law.  <u>Marlyn Nutraceuticals, Inc. v. Mucos

2   Pharma GmbH & Co.</u>, 571 F.3d 873, 877 (9th Cir. 2011).   Under the <u>Sleekcraft</u> factors and

3   applicable Ninth Circuit law, where an almost identical trademark and almost identical domain name

4   exist for similar businesses serving similar merchant customers over the Internet, there is no question

5   that injunctive relief is appropriate. <u>Brookfield Commns, Inc. v. West Coast Entm't Corp.</u>, 174 F.3d

6   1036, 1054 (9th Cir. 1999).  The entire reason for courts employing the <u>Sleekcraft</u> factors is to

7   determine the *likelihood of confusion* – indeed, as stated recently by the Ninth Circuit:  "[T]he *sine*

8   *qua non* of trademark infringement is consumer confusion, and that the *Sleekcraft* factors are but a

9   nonexhaustive list of factors relevant to determining the likelihood of consumer confusion …"

10  <u>Network Automation, Inc. v. Advanced Sys. Concepts</u>, 638 F.3d 1137, 1142 (9th Cir. 2011):

11          Here, evidence of actual confusion (and thus infringement as required under the <u>Sleekcraft</u>

12  factors) is **indisputable** – Plaintiff herein submits a declaration under oath by GROUPION customer

13  Mr. Thomas Kuhlenkamp stating that his online search for Plaintiff GROUPION's "voucher" and

14  "coupon management" products was "**confusing**" because he received multiple, erroneous results

15  pertaining instead to Defendant GROUPON.  Mr. Kuhlenkamp notes that "it took [him] some time to

16  explain [to his employees] that "Groupion" and "Groupon" were two completely different

17  businesses."  (See Declaration of Thomas Kuhlenkamp In Support of Reply to Opposition to

18  Plaintiff's Motion For Summary Judgment And For Preliminary Injunction, Para. 4, 5).

19          Finally, Plaintiff has moved to strike portions of the Declaration of Nick Cioffi under Rule

20  702 of the Federal Rules of Evidence based on unqualified and otherwise inadmissible purported

21  "expert" testimony not allowed under <u>Daubert</u> and related authorities. Nearly the entirety of

22  Defendant's <u>Sleekcraft</u> analysis is based on the inadmissible opinion testimony of Mr. Cioffi; indeed,

23  without that testimony, there is literally no support in Defendant's Opposition to the various

24  <u>Sleekcraft</u> arguments made by Defendant and all such argument must also be stricken from said brief.

25  <u>See</u> F. R. C. P. 56(c) (Summary Judgment Motion briefs must be supported by admissible facts).[7]

26  ---
27  [7] Plaintiff did not bring this action because of any news story associated with Google's proposed acquisition of GROUPON; rather, substantial and additional actual confusion arose as a result of that proposed acquisition and that confusion has continued with confused and mistaken headlines such as
28  the uncontested one that reads "***Groupon sues Google over Groupion Ads"*** which summarizes just

### IV. NO BOND IS NEEDED HERE GIVEN THE LIMITED SCOPE OF THE INJUNCTIVE RELIEF REQUESTED.

#### A. Defendant Can Continue to Use Its Mark For its Web Marketing Services to Its Consumer Customers.

Should the Court grant at least the *minimum* of Plaintiff's requests – *i.e.,* a tailored injunction ordering Defendant to stay out of Plaintiff's claimed Section 44 trademark registration areas, including the areas of software products – this should have no harmful effect on Defendant if it, as it contends, does not make such software and CRM products. Defendant will continue to have unfettered rights to offer "whale watching, yoga lessons, and Indian food" (See Opposition, 1:2-4.) to any customer that it wishes. It cannot, however, enter (or remain) in the areas of software.

#### B. Defendant Cannot Use its Mark for Mobile or Software Products or Services for Merchants.

Should the Court grant Plaintiff's requested injunction, Defendant will not be able to use its mark in the areas rightfully claimed and reserved for Plaintiff, *i.e.*, mobile and software goods and services to assist merchant-customers in managing their relationships with their customers. But this should cause Defendant no anxiety since its own Vice President of Global Operations asserts, "Stated simply, no one can use Groupon to manage customer relationships …"[8], and "No Groupon listing merchant could possibly use Groupon's merchant services as a substitute for CRM software …"[9] Thus, GROUPON should be ordered to stay out of areas in which Plaintiff has exclusive rights.

#### C. No Bond Is Necessary In the Present Case.

Although the need for a bond must be considered by any court issuing a preliminary injunction, the imposition and amount of bond is entirely within the discretion of the Court. F.R.C.P. 65(c). One District Court in <u>Federal Trade Commission v. Equifin International,</u> 1997 U.S. Dist. LEXIS 10288 (C.D. Cal.), explained: "A 'strong likelihood of success on the merits' has been identified as a factor which the Court may properly consider in determining an appropriate bond amount, or dispensing with the bond requirement entirely. [Citations]."

---

how confusing it becomes to have GROUPON provide software, software-as-a-service, and mobile and CRM software to merchants.
[8] See Cioffi Decl., ¶ 48.
[9] Id.

Here, Plaintiff's evidence underscoring its infringement claims is very strong – indeed, by Defendant's own arguments, it is indisputable that Plaintiff has exclusivity in the areas claimed in Plaintiff's Section 44 registration.  Accordingly, no bond should be necessary to keep Defendant out of an area that it claims it has no interest in and one that is subject to exclusive rights by Plaintiff.

## CONCLUSION

GROUPON's conduct violating Plaintiff's legal rights worsens day-to-day by moving into areas legally claimed and reserved exclusively by Plaintiff.  Defendant's repeated, bare-faced false denials of this expansion – and plainly misleading (if not outright deceptive) assertions regarding the ever expanding use of its GROUPON trademark in derogation of Plaintiff's GROUPION trademark – not only justifies tailored protective action by the Court, but indeed, **compels** such action.  Plaintiff's rights will not be protected absent such an Order.

Plaintiff again respectfully requests that Defendant GROUPON be stopped by way of: (1) an Order for Declaratory Relief; (2) an Order for Summary Judgment as to trademark infringement; and, (3) the granting of Preliminary Injunctive Relief pending trial of this matter.  *At the very least*, the Court should make a limited order prohibiting GROUPON from activity within Plaintiff's exclusive areas of commerce and prohibiting it from expanding any further.  Any other result would sanction a clear case of trademark infringement of Plaintiff's federally registered mark in a manner causing and continuing to cause irreparable harm to Plaintiff and to the public.[10]

Dated: September 6, 2011

Respectfully submitted,
COMPUTERLAW GROUP LLP

By:     /s/  Jack Russo
Jack Russo
Attorney for Plaintiff GROUPION LLC

---

[10] As set forth in the foregoing, summary judgment is appropriate and Plaintiff is entitled to enforcement of its federal trademark rights through preliminary and indeed permanent injunctive relief; however, if the Court has any doubt about this, it should accelerate the trial of the case to the date set for the hearing on this motion or soon thereafter under F.R.C.P. Rule 65. Rule 65(a)(1) states, "Before or after beginning a hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing." Should the Court consider any material fact to be in dispute, in light of the substantial, irreparable and ongoing harm being suffered by Plaintiff, trial of this case should be advanced to November 2011; at minimum, the trial of the issues necessary to make the final determination on equitable relief should be accelerated and be held in November 2011 or soon thereafter.