**United States District Court**
For the Northern District of California

1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6

7          FOR THE NORTHERN DISTRICT OF CALIFORNIA

8    GROUPION, LLC.,

9              Plaintiff,                         No. C 11-00870 JSW

10   v.

11   GROUPON, INC., et al..,                      **ORDER DENYING GROUPION'S**
                                                  **MOTIONS**
12             Defendants.
                                        /
13

14         Now before the Court are the motions filed by plaintiff Groupion, LLC ("Groupion") for

15   a preliminary injunction, for summary judgment, and for declaratory judgement.  Having

16   carefully reviewed the parties' papers, considered their arguments and the relevant legal

17   authority, the Court hereby denies Groupion's motions.[1]

18                               **BACKGROUND**

19         Groupion contends that defendant Groupon, Inc. ("Groupon") is infringing upon its

20   trademark.  Groupion moves for a preliminary injunction and for summary judgment on its

21   infringement claim.  Groupion further moves for declaratory judgment on its claim that

22   Groupon's trademark registration should be cancelled.  The Court shall refer to additional facts

23   as necessary in the remainder of this Order.

24   ///

25   ///

26   ///

27                                **ANALYSIS**

28

_____

[1] The Court DENIES Groupion's motion to strike as procedurally improper and
DENIES it on the merits as well.  The Court GRANTS Groupon's motion to file a sur-reply.

**A.      Groupion's Motion for Preliminary Injunction.**

       **1.      Applicable Legal Standards.**

       In order to obtain a preliminary injunction, plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 129 S. Ct. 365, 374 (2008) (citations omitted).  The *Winter* court also noted that because injunctive relief is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375-76 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)).  Thus, "[i]n each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id*. at 376 (citing *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987)).  "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* at 376-77 (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

       In *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011), the Ninth Circuit held that the "serious questions" sliding scale approach survived *Winter*, whereby preliminary injunctive relief may be granted if a plaintiff demonstrates "that serious questions going to the merits were raised and the balance of the hardships tips sharply in the plaintiff's favor," thereby allowing district courts to preserve the status quo where difficult legal questions require more deliberate investigation.  *See Sencion v. Saxon Mortg. Services, LLC*, 2011 WL 1364007 *2 (N.D. Cal. April 11, 2011).  The plaintiff must also satisfy the irreparable harm and public interest requirements under *Winter*.  *Alliance for The Wild Rockies*, 632 F.3d at 1132, 1135.

///

///

///

2

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2.      **Groupion Fails to Show Likelihood of Success on the Merits or That There Are Serious Questions Going to the Merits.**

To establish trademark infringement under the Lanham Act, Groupion must establish that Groupon is "using a mark confusingly similar to a valid, protectable trademark of [Groupion's]." *Brookfield Communications, Inc. v. West Coast Entertainment*, 174 F.3d 1036, 1046 (9th Cir. 1999). The parties dispute whether Groupion was the first to use its mark in the sale of goods or services and/or whether Groupion acquired a protectable mark through its registration. However, the Court need not resolve this dispute at this time because the Court finds that Groupion fails to show a likelihood of success on the issue of confusion, or even that there are serious questions going to the merits.

At issue is whether Groupion has shown a likelihood of confusion, *i.e.* "whether the similarity of the marks is likely to confuse the customers about the source of the products." *GoTo.Com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1205 (9th Cir. 2000) (internal quotations omitted). Groupion bears the burden of proving likelihood of confusion. *See Lindy Pen Co., Inc. v. Bic Pen Corp.*, 725 F.2d 1240, 1243 (9th Cir. 1984). "Likelihood of confusion requires that confusion be probable, not simply a possibility." *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir. 1987); *see also Playboy Enterprises, Inc. v. Terri Welles, Inc.*, 78 F. Supp. 2d 1066, 1083 (S.D. Cal. 1999) ("There must be a *substantial* likelihood that the public will be confused.") (emphasis in original) (citation omitted), *rev'd in part on other grounds*, 279 F.3d 796 (9th Cir. 2002).

To determine whether there is a likelihood of confusion between the marks, the Ninth Circuit applies the following eight factor test: "(1) the similarity of the marks; (2) the relatedness of the two companies' services; (3) the marketing channel used; (4) the strength of [the plaintiff's] mark; (5) [the defendant's] intent in selecting its mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers." *GoTo.Com, Inc.*, 202 F.3d at 1205. However, "the eight-factor test is a pliant one, in which some factors are much more important than others." *Id*.

i.      **Similarity of the Marks.**

3

United States District Court

For the Northern District of California

1    The similarity of the marks is a critical question in this analysis. *GoTo.Com*, 202 F.3d at

2    1205. "[T]he greater the similarity between the two marks at issue, the greater the likelihood of

3    confusion." *Id*. at 1206. The Ninth Circuit has developed certain axioms to guide the similarity

4    analysis: (1) "the marks must be considered in their entirety and as they appear in the

5    marketplace;" (2) "similarity is adjudged in terms of appearance, sound, and meaning;" and (3)

6    "similarities are weighed more heavily than differences." *Id*. at 1206 (citations omitted).

7    Despite the similarity in the spelling of the two words, the Court finds that the marks,

8    when viewed in their entirety and as they appear in the marketplace, are dissimilar. Groupion

9    presents its mark in two colors, with the "group" in black and the "ion" in green. Only the "G"

10   is capitalized. All of the letters are outlined in white and the mark is on a grey background,

11   followed by the tag line "Business Groupware and CRM for the Cloud." In contrast, Groupon's

12   mark is all capitalized, all of the letters are in the same white color, and it appears on a black

13   background. Moreover, Groupon does not display other marks or words with its mark.

14   Additionally, groupion is a three syllable word, while groupon is a two syllable one.

15   Both "groupon" and "groupion" are made up words. However, they were created by

16   different words and, thus, imply different meanings. Groupon was formed by combining the

17   words "group" and "coupon." (Declaration of Nick Cioffi, ¶ 4.) Groupion states that it was

18   created from the words "groupware" and "companion." (Declaration of Jedediah Wakefield,

19   Exs. 1,2.) The United States Patent and Trademark Office assigned the pseudo mark "group

20   ion," as two words, presumably because it believed Groupion was means "group" and "ion."

21   Regardless of which is the accurate meaning of Groupion, neither has the same as the meaning

22   as Groupon. This factor therefore weighs against finding a likelihood of confusion.

23                    **ii.    Relatedness of the Goods or Services.**

24   "Related goods are those which would be reasonably thought by the buying public to

25   come from the same source if sold under the same mark." *AMF Inc. v. Sleekcraft Boats*, 599

26   F.2d 341, 348 n.10 (9th Cir. 1979) (internal quotations omitted). "Related goods are generally

27   more likely than unrelated good to confuse the public as the producers of the goods."

28   *Brookfield Communications*, 174 F.3d at 1055-56 (noting that if the parties did not compete to

4

any extent whatsoever, the likelihood of confusion would probably be remote even though the marks were virtually identical); *see also E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992) ("Where goods are related or complementary, the danger of consumer confusion is heightened."). To determine whether goods are related, courts may consider whether the goods are complementary, whether the products are sold to the same class of purchasers, and whether the goods are similar in use and function. *Sleekcraft*, 599 F.2d at 350.

Groupion describes itself as a "web-based Business Groupware and CRM platform which helps companies and project teams work together and execute different tasks within one integrated working environment." (Declaration of Jedediah Wakefield, Ex. 14; *see also* Mot. at 2 (describing Groupion as "a developer and marketer of Internet web-based Business Groupware and Customer Relations Management ('CRM') SaaS ('software as a service') platforms").) Groupion developed customer relations software to "unify all of the essential functions of small to medium businesses that deal with customer information." (Declaration of Peter-Christoph Haider ("Haider Decl."), ¶ 9.) It developed a "software as a service" system "that could be used by merchants to track their customers." (*Id.*, ¶ 5.) The service Groupion provides is further described at Exhibits 25 and 26 to the declaration of Nick Cioffi.

In contrast, Groupon is a "'deal of the day' website ... that connects merchants to consumers by offering goods and services at a discount." (Declaration of Nick Cioffi ("Cioffi Decl."), ¶ 2.) Groupon utilizes "tipping point" technology. The deals offered are not effective, and customers are not charged, unless the minimum number selected by the merchant purchase the deal. (*Id.*, ¶¶ 3, 5.) Groupon organizes the deals it offers by geography, generally by a specific city. (*Id.*, ¶ 22.) Each of Groupon's websites offers a different featured deal for that location, along with several other less prominent deals every day. (*Id.*) People can access the daily deals by visiting these websites, by signing up with Groupon to receive a daily email, or through a mobile application for smart phones. (*Id.*, ¶¶ 23-25.) Groupon also offers support to merchants offering groupons. Groupon provide merchants advice about offering discounts on Groupon and explain what they can expect in the process. (*Id.*, ¶¶ 31-35.) These services are

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    not general business tools or software products.  (*Id*., ¶ 33.)   Ordinarily, Groupon does not

2    share with the merchants the names, addresses, or any other contact information of the

3    customers who sign up for the daily deals.  (*Id*., ¶ 49.)  Nor does Groupon provide a mechanism

4    for merchants to enter, store, or retrieve customer information.  (*Id*., ¶ 52.)  The parties'

5    products are used for different functions and purposes, and are purchased by different classes of

6    consumers.  Therefore, the Court finds that Groupon's and Groupion's goods and services are

7    not related.

8                    **iii.    Marketing Channels Used.**

9            "'Convergent marketing channels increase the likelihood of confusion.'"  *Official*

10   *Airline Guides, Inc., v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993) (quoting *Nutri/System, Inc. v.*

11   *Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987)).  Groupion argues that this factor

12   weighs in favor of showing a likelihood of confusion because both companies use the internet to

13   advertise and market their goods.  However, the shared used of the internet as a marketing

14   channel is ubiquitous and, thus, does not shed much light on the likelihood of consumer

15   confusion.  *See Network Automation v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1151

16   (9th Cir. 2011) ("Today, it would be the rare commercial retailer that did not advertise online,

17   and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood

18   of consumer confusion."); *see also Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d

19   1020, 1028 (9th Cir. 2004) ("Given the broad use of the internet today, the same could be said

20   for countless companies.  Thus, this factor merits little weight.")

21           To the extent the companies market or advertise outside of the internet, their marketing

22   channels differ.  Groupion touts its participation in a European trade show for CRMs.  (Haider

23   Decl., ¶ 23.)  Groupon has not participated in this event.  (Cioffi Decl., ¶ 57.)  Moreover,

24   Groupon engages in substantial television, radio, and billboard advertising.  (*Id*., ¶ 55.)

25   Groupion does not.  (Wakefield Decl., Ex. 4.)  Therefore, the Court finds this factor to be

26   neutral or tilting slightly against a finding of a likelihood of confusion.

27   ///

28   ///

United States District Court

For the Northern District of California

### iv. Strength of the Mark.

"The stronger a mark – meaning the more likely it is to be remembered and associated in the public mind with the mark's owner – the greater the protection it is accorded by the trademark laws." *Brookfield*, 174 F.3d at 1058. The Ninth Circuit utilizes a two-prong test to determine the strength of a particular mark. Both the conceptual strength and the commercial strength of a mark are considered. *See GoTo.com*, 202 F.3d at 1207 ("'strength' of the trademark is evaluated in terms of its conceptual strength and commercial strength"); *see also Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988) (approving analysis of mark for distinctiveness as well as strength in the marketplace). "Conceptual strength involves classification of a mark 'along a spectrum of generally increasing inherent distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful." *Network Automation*, 638 F.3d at 1149 (quoting *Brookfield*, 174 F.3d at 1058). "The strength of a mark is determined by its placement on a continuum of marks from generic, afforded no protection; through descriptive or suggestive, given moderate protection; to arbitrary or fanciful awarded maximum protection." *E.&J. Gallo Winery v. Gallo Cattle*, 967 F.2d 1280, 1291 (9th Cir. 1992) (quoting *Nutri/System*, 809 F.2d at 605) (internal quotation marks omitted).

"Commercial strength is based on 'actual marketplace recognition,' and thus 'advertising expenditures can transform a suggestive mark into a strong mark.'" *Network Automation*, 638 F.3d at 1149 (quoting *Brookfield*, 174 F.3d at 1058). "Use of similar marks by third-party companies in the relevant industry weakens the mark at issue." *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1088 (9th Cir. 2005).

Groupion argues that its mark is strong because it suggests nothing relating to software or marketing campaigns. (Mot. at 16.) Groupon counters that "group" suggests groupware and that "ion" suggests the "cloud." Regardless of whether the mark Groupion falls on the spectrum, the Court finds that use of similar marks in the relevant industry as well as the lack of evidence regarding Groupion's commercial strength in the United States undermines the strength of the mark. Therefore, this factor also weighs against a finding of a likelihood of confusion.

United States District Court

For the Northern District of California

### v.      Groupon's Intent in Selecting its Mark.

"When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public." *Official Airline Guides*, 6 F.3d at 1394.  Groupon argues vigorously that Groupon "*must* have intentionally selected the confusingly similar trade-name." (Mot. at 19) (emphasis in original.)  However, Groupion does not submit any evidence to show that Groupon actually knew of Groupion when it selected its mark.  In contrast, Groupon submits a declaration stating that no one at Groupon had heard of Groupion when they selected the mark.  (Cioffi Decl., ¶ 4.)

Groupion also argues that bad faith is demonstrated by Groupon's failure to stop using its mark after Groupion sent a cease and desist letter on May 26, 2011.  However, "the failure to stop using a mark after receiving a cease and desist letter does not show willful infringement and is not necessarily indicative of bad faith, particularly where the trademark at issue is not federally registered and the junior user has a reasonable basis to believe that it has a legal right to use the mark at issue." *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1096 (C.D. Cal. 2003) (internal quotation marks and citation omitted).  Similar to *Matrix Motor*, Groupion's mark was not federally registered when Groupon adopted its mark.  Moreover, in light of the differences between the marks, the Court finds that Groupon's failure to stop using its mark after receipt of the cease and desist letter is not necessarily indicative of any bad faith.  Accordingly, the Court finds that this factor weighs against a finding of a likelihood of confusion.

### vi.      Evidence of Actual Confusion.

"Evidence of actual confusion by consumers is strong evidence of likelihood of confusion." *Surfvivor Media, Inc. v. Survivor Productions,* 406 F.3d 625, 633 (9th Cir. 2005). However, the absence of evidence of actual confusion is generally unnoteworthy because actual confusion is hard to prove.  *Brookfield*, 174 F.3d at 1050.  "The focus is confusion with respect to the source of a product or service." *Rearden LLC v. Rearden Commerce, Inc.*, 597 F. Supp. 2d 1006, 1023 (N.D. Cal. 2009); *see also Entrepreneur Media, Inc. v. Smith,* 279 F.3d 1135, 1151 (9th Cir. 2002) ("To constitute trademark infringement, use of a mark must be likely to

United States District Court

For the Northern District of California

1    confuse an appreciable number of people as to the source of a product.").    Upon review of

2    Groupion's evidence, the Court finds that none of it demonstrates instances of actual confusion

3    by its customers regarding the source of its products.   Thus, the Court finds that this factor is

4    neutral.

5    **vii.    Likelihood of Expansion into Other Markets.**

6        "Inasmuch as a trademark owner is afforded greater protection against competing goods,

7    a 'strong possibility' that either party may expand his business to compete with the other will

8    weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354

9    (internal quotations omitted).  Groupion argues that Groupon's purchase of a software

10   development company that specializes in mobile applications is evidence of Groupon's likely

11   expansion into Groupion's product line.  However, Groupon provides evidence showing that its

12   development of mobile tools is not for intracompany groupware, but rather, to get deals to

13   customers. (Cioffi Decl., ¶¶ 18, 25, 29.)  Groupion has no evidence to the contrary.

14   Accordingly, the Court finds that this factor weighs in favor of Groupon.

15   **viii.    Degree of Care Likely to be Exercised by Purchasers.**

16       Finally, the Court concludes that the degree of care likely to be exercised by purchasers

17   weighs against a finding of likelihood of confusion.  As Groupion concedes, customers who are

18   seeking and evaluating software for use in their business will likely use more care than ordinary

19   consumers. (Mot. at 19.)  Additionally, merchants who might seek to offer group discounts

20   through Groupon are also likely to exercise care in making such purchasing decisions. (Cioffi

21   Decl., ¶¶ 35, 36.)  This factor also weighs against a finding of likelihood of confusion.

22       The Court finds that, on balance, application of the *Sleekcraft* factors demonstrates that

23   Groupion has not shown a likelihood of success on the merits as to whether Groupon is using a

24   confusingly similar mark.[2]   Therefore, Groupion has not demonstrated that it is likely to succeed

25

26       [2] On November 3, 2011, Groupion submitted an administrative motion to submit
     supplemental evidence regarding the relatedness of the parties' goods and services.
27   Groupion seeks to submit evidence on Groupon's announcement of its "Groupon Rewards"
     program.  Groupion states that it did not become aware of this evidence until October 31,
28   2011.  However, it appears as though Groupon announced its "Groupon Rewards" program
     at the end of September 2011.  Nevertheless, even if the Court were to consider this

United States District Court

For the Northern District of California

1    on the merits of its infringement claim.  Nor has Groupion demonstrated there is a serious

2    question going to the merits on its infringement claim.  Accordingly, the Court denies

3    Groupion's motion for a preliminary injunction.

4              **3.       Lack of Irreparable Harm.**

5              Groupion further fails to demonstrate it will suffer irreparable harm.  Groupion relies on

6    the presumption of irreparable harm upon a finding of likelihood of success on the merits.

7    However, under *Winter*, Groupion is required to demonstrate, by the introduction of admissible

8    evidence and with a clear likelihood of success that the harm is real, imminent and significant,

9    not just speculative or potential.  *Winter*, 129 S. Ct. at 374.  The presumption of irreparable

10   harm is no longer applicable.  *See eBay Inc v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006);

11   *see also Flexible Lifeline Systems, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011).[3]  Groupion fails to

12   submit any evidence showing it will suffer irreparable harm.  Moreover, the Court notes that

13   Groupion's delay in moving for an injunction undermines implies a lack of urgency and, thus,

14   further undermines the need for a preliminary injunction.  Therefore, for this additional

15   independent reason, the Court denies Groupion's motion for a preliminary injunction.

16   **B.       Groupion's Motion for Summary Judgment.**

17            **1.       Applicable Legal Standards.**

18             A principal purpose of the summary judgment procedure is to identify and dispose of

19   factually unsupported claims.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).

20   Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and

21   admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

22   any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R.

23   ───────────────────────

24   additional evidence, although it shows that Groupon's goods and services are moving a bit
     more into the field of Groupion's goods and services, it would not alter the Court's
     conclusion.  The Court would still find that Groupon's and Groupion's goods and services

25   are not closely related and that, upon consideration of and balancing all of the factors,
     Groupion has not demonstrated that Groupon is using a confusingly similar mark.

26

27   [3] Although the Ninth Circuit applied the presumption of irreparable harm in *Marlyn
     Netraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009), the
     court later clarified that *Marlyn* court opinion was not binding and did not constitute an

28   affirmation of the presumptions continued vitality because the *Marlyn* court did not consider
     the effect of *eBay* or of *Winter*.  *Flexible Lifeline*, 654 F.3d at 997.

Civ. P. 56(c). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact must take care adequately to point a court to the evidence precluding summary judgment because a court is "'not required to comb the record to find some reason to deny a motion for summary judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

///

///

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

**2.      Groupion's Motion.**

As discussed above, Groupion failed to make a showing that there is a likelihood of confusion between its and Groupon's mark.  Therefore, the Court finds that Groupon fails to demonstrate that it is entitled to judgment as a matter of law on its infringement claim and, thus, denies Groupion's motion for summary judgment.

**C.      Groupion's Motion for Declaratory Judgment.**

Groupion moves for declaratory judgment on its claim that Groupon's registration should be cancelled.  However, a party may not make a motion for declaratory relief or judgment.  The Court thus construes this motion as one for summary judgment on Groupion's cancellation claim.  *See Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009).

Groupion argues that its use of its mark predates Groupon's use of its mark in commerce and that Groupon procured its registration through fraud or other inequitable conduct.  However, Groupon submits evidence to the contrary.  Therefore, the Court finds that there are questions of fact which preclude summary judgment on Groupion's claim for declaratory relief.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Groupion's motions for a preliminary injunction, for summary judgment, and for declaratory judgement.

**IT IS SO ORDERED.**

Dated: November 28, 2011

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE