IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GROUPION, LLC.,

        Plaintiff,

vs.

GROUPON, INC., et al.,

        Defendants.
_____/

No. 11-0870 MEJ

**ORDER RE: DISCOVERY DISPUTE**

**Re: Docket No. 98**

Before the Court is the parties' Joint Letter Brief Regarding Deposition Discovery Dispute, filed January 17, 2012. Dkt. No. 98. The parties dispute whether Plaintiff Groupion, LLC ("Groupion") should be permitted to take the depositions of Defendant Groupon, Inc.'s ("Groupon") CEO, Chairman, and four Senior Vice Presidents. The parties further dispute whether Groupion is entitled to a second Rule 30(b)(6) deposition of Groupon. For the reasons set forth below, the Court DENIES Groupion's deposition requests.

## BACKGROUND

This case is an action for alleged trademark infringement and unfair competition based upon the named Defendants having improperly and willfully used a mark nearly identical to Groupion's trademark, GROUPION, without permission, thereby causing customer confusion, and unfairly competing with Groupion by the improper use of its trademark. First Am. Compl. ¶ 1, Dkt. No. 10. Groupion describes itself as a web-based Business Groupware and Customer Relations Management ("CRM") platform which helps companies and project teams work together and execute different tasks within one integrated working environment, including coupon management. *Id.* at ¶ 3.

Groupon is a "deal of the day" website that connects merchants to consumers by offering goods and services at a discount. Cioffi Decl. ¶ 2, Dkt. No. 51.

On May 31, 2011, Groupion noticed the deposition of Groupon pursuant to Federal Rule of Civil Procedure ("Rule") 30(b)(6), to take place on July 19, 2011. Dkt. No. 98, Ex. 1. Groupon subsequently produced Nick Cioffi, a founding member of Groupon and current Vice President of Sales and Operation Strategy, for deposition on November 15, 2011. *Id.* at 2, 5. Groupion contends that Mr. Cioffi was unprepared and unable to answer questions essential to the case. *Id.* at 5. Although Groupon contends that Mr. Cioffi was available to continue testifying that day, Groupion terminated the deposition after six-and-a-half hours of testimony. *Id.* at 3. Three days after the deposition, on November 18, Groupion noticed a second Rule 30(b)(6) deposition, which included 22 new topics, to take place on December 13, 2011. *Id.* at Ex. 2. The second Rule 30(b)(6) deposition has yet to occur. *Id*. at 4.

Also on November 18, 2011, Groupion noticed the depositions of six high-ranking Groupon employees – its CEO, Executive Chairman, and four Senior Vice Presidents. *Id.* at Ex. 4. Although the depositions for these named employees were scheduled to occur between December 9 and December 14, 2011, none of the depositions have taken place. *Id*. at 4.

**DISCUSSION**

In their joint letter, the parties dispute whether Groupion should be permitted to take depositions of Defendant's CEO, Chairman, and four Senior Vice Presidents. *Id.* at 1. Groupon contends these employees are protected by the "apex" doctrine. *Id*. The parties also dispute whether Plaintiff is entitled to a second Rule 30(b)(6) deposition. *Id*. The Court shall consider each argument in turn.

**I.  APEX DEPOSITIONS**

As to the apex depositions, Groupon argues that Groupion has failed to identify any relevant facts uniquely in the possession of the named deponents. *Id.* at 2. Groupon further argues that it has identified numerous other witnesses, including its Rule 30(b)(6) deponent, Nick Cioffi, who possess the requested information, and the fact that Groupion does not like the answers it got from Mr.

Cioffi does not prove that Groupon's senior management has unique knowledge on this subject. *Id.*

In response, Groupion argues that Mr. Cioffi was completely unprepared to address most of the pivotal issues in this case and wholly unable to testify as to the issues within Groupon's CEO's knowledge. *Id.* at 5. Specifically, Groupion contends that Mr. Cioffi lacked knowledge regarding the following issues: (1) whether Groupon offers or plans to offer CRM software; (2) whether any domestic or international search was conducted by Groupon in 2008 regarding potential trademark or domain-name conflicts with the mark "Groupon"; (3) the identity of or the substance of any communications with the original owner of "www.groupon.com" and the acquisition of this domain name; (4) Groupon's iPhone application; and (5) Groupon's ethics policy. *Id.* at 5.

### A. Legal Standard

"A party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied." *Affinity Labs of Texas v. Apple, Inc.*, 2011 WL 1753982, at *15 (N.D. Cal. May 09, 2011) (citation omitted). Absent extraordinary circumstances, it is very unusual for a court to prohibit the taking of a deposition. *Id.* (citation omitted). However, "[w]hen a party seeks the deposition of a high-level executive (a so-called "apex" deposition), the court may exercise its discretion under the federal rules to limit discovery." *Id.* (citations omitted). "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Id.* (citation omitted). A claimed lack of knowledge, by itself, is insufficient to preclude a deposition. *Id.* (citation omitted). "Moreover, the fact that the apex witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery." *Id.* (citation omitted). Additionally, "when a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition." *Id.* (citation omitted).

"That said, 'Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment.'" *Id.* (citing *Celerity, Inc. v. Ultra Clean Holding*,

3

Inc., 2007 WL 205067, at *3 (N.D. Cal., Jan. 25, 2007)). "For that reason, parties seeking to depose a high ranking corporate officer must first establish that the executive (1) has unique, non-repetitive, firsthand knowledge of the facts at issue in the case, and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Id.* (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir.1979)). "Where a high-level decision maker 'removed from the daily subjects of the litigation' has no unique personal knowledge of the facts at issue, a deposition of the official is improper." *Id.* (citation omitted). "This is especially so where the information sought in the deposition can be obtained through less intrusive discovery methods (such as interrogatories) or from depositions of lower-level employees with more direct knowledge of the facts at issue." *Id.* (citing *Salter*, 593 F.2d at 651).

**B.  Application to the Case at Bar**

Groupion has the burden of showing that Groupon's apex employees have unique knowledge of the five topics identified in the parties' joint letter. *See* Dkt. 98 at 5. Accordingly, the Court shall consider each topic in turn.

1.  Groupon's Plans to Offer CRM Services

In his deposition, Mr. Cioffi stated that Groupon had "[no] plan to offer CRM software." Dkt. 98, Ex. 3 at 86:22-25. He also confirmed an earlier statement from his declaration that "Groupon does not offer CRM software of any kind," and that "[w]hile we are constantly improving our deal-related services, we have no plan to offer commercial software such as CRM or business groupware in the future." *Id.*, Ex. 3 at 111:21-112:4. Mr. Cioffi acknowledged that he gave these statements without interviewing or confirming the information with Defendant's CEO, Director, Board of Directors, or any of the Senior Vice Presidents. *Id.*, Ex. 3 at 112:15-113:1.

As the Vice President of Sales and Operation Strategy, and as one of Groupon's founders, it appears that Mr. Cioffi would be privy to information regarding Groupon's future plans as a company, including its plans to offer CRM software. Furthermore, Mr. Cioffi's most recent declaration confirms that he has intimate knowledge of the products and services that Groupon plans to offer in the coming months, including Groupon's services currently in trial mode. Dkt. 101 at 1-

4

3. However, Groupion focuses on the fact that Mr. Cioffi did not interview the other members of Groupon's Board or Senior Vice Presidents when referencing its future plans. Dkt. 98 at 5. For this reason, Groupion infers that these employees must have additional, unique, knowledge of Groupon's future plans regarding CRM services. This inference is misguided. Simply because Mr. Cioffi failed to interview or confirm information with his colleagues does not mean that these other employees have unique knowledge of the topic. Thus, Groupion has failed to establish that the apex deponents have unique, non-repetitive, firsthand knowledge of the facts related to CRM services. Moreover, even if they did have such knowledge, Groupion has not established that other less intrusive means of discovery, such as interrogatories, have been exhausted without success. Accordingly, the Court DENIES Groupion's request with respect to Groupon's plans to offer CRM.

### 2. Groupon's Trademark Search

In his deposition, Mr. Cioffi acknowledged that he was unaware of any trademark searches for conflicting marks in the calendar year of 2008. Dkt. 98, Ex. 3 at 30:20-31:3. He also testified that he did he know if any law firm was retained to conduct a trademark search for Groupon, (*Id.*, Ex. 3 at 31:5-7), and that he did not interview any lawyers who did trademark work for Groupon or had any communication on Groupon's behalf with the U.S. Patent and Trademark Office in the calendar years of 2008, 2009, and 2010 *(Id.*, Ex. 3 at 60:25-61:7). Finally, Mr. Cioffi stated he did not know if Groupon's CEO had any interactions with the U.S. Patent and Trademarks Office. *Id.*, Ex. 3 at 61:10-13.

Considering the trademark infringement nature of this case, the Court finds that information regarding Groupon's domestic and international trademark search is likely relevant to Groupion's claims. Yet it is clear from the record that at the time of his deposition, Mr. Cioffi had little knowledge related to Groupon's trademark searches. It is likely that other founding members, including Groupon's CEO, would have unique knowledge of this undertaking.

Despite this potential relevancy, Groupon asserts that the requested information is privileged. Dkt. 98 at 3. Groupon cites *Flagstar Bank, FSB v. Freestar Bank, N.A.*, as its authority for classifying a company's trademark search material, and any deposition of the topic, as privileged.

2009 WL 2706965, at *4-5 (N.D. Ill. Aug. 25, 2009). But, while the court in *Flagstar* did hold that trademark search reports in that case were privileged, it recognized that the Seventh Circuit counseled against the adoption of "a bright-line rule regarding trademark searches," and that "the privilege must be made and sustained on a document-by-document basis." *Id*. at 4 (quoting *United States v. White*, 970 F.2d 328, 334 (7th Cir.1992)). Furthermore, Groupon has not cited any authority in the Ninth Circuit that suggests a blanket privilege covering a company's international and domestic trademark searches. At this point, there is nothing in the record before this Court that would indicate that Defendant's trademark searches were intended to be conducted in confidence. Accordingly, the Court finds that, without such a showing, the trademark search reports are not privileged. Thus, Groupion should be entitled to discovery regarding Groupon's trademark search.

However, Groupion has not established that the apex deponents have unique, non-repetitive, firsthand knowledge of the facts related to the acquisition of the Groupon domain name. More than likely, other employees and non-employees would be involved in such a search. Indeed, Groupion has not shown that it even attempted less intrusive means of discovery, such as interrogatories or depositions of lower-ranking employees. Accordingly, the Court DENIES Groupion's request with respect to Groupon's trademark search.

### 3. Groupon's Domain Name Acquisition

In his deposition, Mr. Cioffi testified that he did not personally conduct the negotiations for the acquisition of the Groupon.com domain name. Dkt. 98, Ex. 3 at 62:5-8. He also testified that he did not interview those that were involved in the acquisition. *Id*., Ex. 3 at 62:9-18. Thus, the Court finds that Mr. Cioffi did not have the requisite knowledge on this topic for the Rule 30(b)(6) deposition and it is possible that the apex deponents have unique, non-repetitive, firsthand knowledge of the facts related to the acquisition of the Groupon domain name. However, even if they did have such knowledge, Groupion has not established that other less intrusive means of discovery, such as interrogatories, have been exhausted without success. Accordingly, the Court finds that any depositions taken from an apex employee regarding Groupon's acquisition of the domain name should not be permitted.

6

### 4. Groupon's iPhone merchant application

In his deposition, Mr. Cioffi testified that he did not know when Groupon's merchant application was first made available for the iPhone, iPad, and Android platform machines, nor did he know who was responsible for developing the application. Dkt. No. 98, Ex. 3 at 83:2-7. Mr. Cioffi stated that this information would be known "within the merchant services team." *Id.*, Ex. 3 at 83:9-11. Based on this testimony, the Court finds that Mr. Cioffi did not have the requisite knowledge on this topic for the Rule 30(b)(6) deposition. However, Groupion has not shown that it attempted to obtain this information from a deposition of one or more employees on the merchant services team, let alone whether other less intrusive means of discovery, such as interrogatories, have been exhausted without success. Accordingly, the Court finds that any depositions taken from an apex employee regarding Groupon's iPhone application should not be permitted.

### 5. Groupon's Ethics Policy

Finally, Mr. Cioffi testified that he did not know if Groupon's ethics policy required employees to act honestly and deal in good faith, nor if Groupon's CEO had signed off on the ethics policy. Dkt. 98, Ex. 3 at 237:12-238:17. However, while his testimony establishes that Mr. Cioffi was not knowledgeable on this topic, the Court finds that Groupion has failed to establish how discovery related to Groupon's ethics policy is relevant to trademark and unfair competition claims before this Court. And, even if the Court were to find this information relevant, Groupion has not shown that other less intrusive means of discovery, such as interrogatories, have been exhausted without success. Accordingly, the Court finds that any depositions taken from an apex employee regarding Groupon's ethics policy should not be permitted.

### 6. Summary

In sum, Groupion has failed to establish the need for apex depositions in this case. Specifically, Groupion has failed to establish that the deponents have unique first-hand, non-repetitive knowledge of facts at issue in the case, and that it has exhausted other less intrusive discovery methods. Accordingly, Groupion's request is DENIED.

## II. RULE 30(B)(6) DEPOSITION

Groupion also seeks a second Rule 30(b)(6) deposition on new topics. Groupion does not address this issue directly in its portion of the joint letter, but Groupon argues that it failed to seek leave to take a second 30(b)(6) deposition. Dkt. No. 98 at 3. Groupon further argues that any such request should be denied because Groupion terminated Mr. Cioffi's deposition, even though he was available to continue testifying on the day of his Rule 30(b)(6) deposition. *Id.*

As a preliminary matter, the Court agrees with Groupon that, under Rule 30(a)(2), Groupion should have requested leave of the presiding judge to take a second 30(b)(6) deposition, having already noticed and taken one 30(b)(6) deposition. *See* Fed. R. Civ. P. 30(a)(2)(A)(ii) (providing that leave must be granted to take the deposition of a deponent who "has already been deposed in the case"). The question thus becomes whether, under Rule 30(a)(2), the Court should now give leave to Groupion to take a second 30(b)(6) deposition. Rule 30(a)(2) provides that a "court must grant leave to the extent consistent with Rule 26(b)(2)." Fed. R. Civ. P. 30(a)(2). Rule 26(b)(2) in turn provides that a court must limit discovery where, *e.g.*, "the discovery sought is unreasonably cumulative or duplicative," "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," or "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(6)(2)(c).

Here, the Court finds that the presiding judge granted Groupion ample opportunity to obtain the requested information during the discovery phase of this case and, as discussed above, Groupion has failed to establish that it even attempted to obtain the requested discovery through less intrusive methods. Moreover, Groupion voluntarily terminated the first 30(b)(6) deposition, and it has not established in its portion of the joint letter that new evidence has become available since that time. Accordingly, the Court DENIES Groupion's request for leave to take a second 30(b)(6) deposition.

///

///

8

**CONCLUSION**

Based on the analysis above, the Court DENIES Groupion's request for further depositions.

**IT IS SO ORDERED.**

Dated: February 2, 2012

MARIA-ELENA JAMES
United States Magistrate Judge