IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GROUPION, LLC., | |
| Plaintiff, | No. C 11-00870 JSW |
| v. | **REDACTED** |
| GROUPON, INC., et al.., | |
| Defendants. | **ORDER DENYING MOTIONS TO DISMISS** |

Now before the Court is the motion filed by plaintiff Groupion, LLC ("Groupion") to dismiss the counterclaims filed by Groupon, Inc. ("Groupon") pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and the motion filed by Peter-Christoph Haider ("Haider") to dismiss for lack of personal jurisdiction and insufficient service of process. The Court finds that these matters are appropriate for disposition without oral argument and are deemed submitted. *See* N.D. Cal. Civ. L.R. 7-1(b). Accordingly, the hearing set for June 8, 2012 is hereby VACATED. Having carefully reviewed the parties' papers, considered their arguments and the relevant legal authority, the Court hereby denies Groupion's and Haiders's motions.[1]

As the parties are familiar with the facts and procedural history of this case, there is no need to recite them here, except where useful in reaching the disposition.

///

---

[1] The Court GRANTS Groupon's motion to seal with respect to Exhibits 4 and 5 attached to the declaration of Jedediah Wakefield in full and Exhibit 1 at 83:3 - 93:12 and 103:12-25. The Court denies Groupon's motion with respect to the remainder of Exhibit 1.

**ANALYSIS**

**A.   Applicable Legal Standards.**

**1.   Failure to State a Claim.**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986).  The Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint, when the authenticity of those documents is not questioned, and other matters of which the Court can take judicial notice.  *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Even under Rule 8(a)'s liberal pleading standard, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. ... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted).

///

///

2

### 2. Lack of Personal Jurisdiction.

A defendant may move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. The plaintiff bears the burden to establish personal jurisdiction. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). The Court may consider evidence presented in affidavits to assist in its determination and may order discovery on the jurisdictional issues. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). However, when "a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss .... That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (citations omitted); *see also AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (holding that where the trial court rules on jurisdictional issue based on affidavits and without holding an evidentiary hearing, the plaintiff need only make a prima facie showing). Where the facts are not directly controverted, plaintiff's version of the facts is taken as true. *See AT&T*, 94 F.3d at 588. Likewise, conflicts between the facts contained in the parties' affidavits must be resolved in a plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

"Personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (citing *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996)). Because California's long arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law and federal due process are the same. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state. The overriding constitutional principle is that maintenance of an action in the forum must not offend "traditional

conception[s] of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). The defendant's "conduct and connection with the forum State" must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Whether a party's contacts with the forum are sufficient to permit the state to exercise jurisdiction depends upon the facts of each case. *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1251 (9th Cir. 1980). For specific jurisdiction, "the issue of whether jurisdiction will lie turns on an evaluation of the nature and quality of the defendant's contacts in relation to the cause of action." *See Data Disc*, 557 F.2d at 1287; *see also Calder v. Jones*, 465 U.S. 783, 788 (1984) ("In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation.") (internal quotations and citation omitted).

Specific jurisdiction over a defendant exists where: (1) the defendant has purposefully directed his or her activities at residents of the forum state or the forum state itself; (2) the plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger,* 374 F.3d at 802; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-77 (1985). "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Schwarzenegger*, 374 F.3d at 802 (internal citation omitted). "On the other hand, if the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Menken*, 503 F.3d at 1057 (internal quotations and citations omitted). The Ninth Circuit has noted that the "purposeful availment" prong, "[d]espite its label ... includes both purposeful availment and purposeful direction. It may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

4

"'Purposeful availment' requires that the defendant 'have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (citing *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988)). The mere existence of a contract with a party in the forum state does not alone constitute sufficient minimum contacts for jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). "Instead the Court must look to 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' to determine if the defendant's contacts are 'substantial' and not merely 'random, fortuitous, or attenuated.'" *Sher*, 91 F.2d at 1362 (citing *Burger King*, 471 U.S. at 479). Importantly, the "solicitation of business in the forum state that results in business being transacted or contract negotiations will probably be considered purposeful availment." *Sinatra*, 854 F.2d at 1195 (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986).

"[T]he purposeful availment test may also be satisfied if the defendant intentionally directed his activities into the forum state." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1131 (9th Cir. 2003). When there are tort claims involved in a matter, it is proper to analyze the first prong of the three-part personal jurisdiction test under the *Calder* "effects" test. *See Doe*, 248 F.3d at 924. Under this test, the defendant must have: "(1) committed an intentional act, (2) expressly aimed at the forum state, and (3) caused harm that the defendant knows is likely to be suffered in the forum state." *Jonathan Browning, Inc. v. Venetian Casino Resort, LLC*, No. C 07-3983, 2007 WL 4532214 at *4 (N.D. Cal. Dec.19, 2007) (citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

In *Bancroft & Masters*, the Ninth Circuit held that, although not every act with foreseeable consequences in the forum state would support specific jurisdiction over a foreign defendant absent "something more," this requirement was satisfied by the "express aiming" component of the *Calder* test. *Bancroft & Masters*, 223 F.3d at 1087. The Court further explained that this "requirement is satisfied when the defendant is alleged to have engaged in

5

wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Id.*

### 3. Insufficiency of Service of Process.

Haider also moves to dismiss under Federal Rule of Civil Procedure 12(b)(5) ("Rule 12(b)(5)") for insufficient service of process. Federal courts cannot exercise personal jurisdiction over a defendant without proper service of process. *Omni Capital Int'l, Ltd. v. Wolff & Co.*, 484 U.S. 97, 104 (1987). To determine whether service of process was proper, courts look to the requirements of Federal Rule of Civil Procedure 4. Rule 4(f) governs service of individuals in foreign countries.

### B. Groupion's Motion To Dismiss for Failure to State a Claim.

Groupion moves to dismiss Groupon's counterclaim for cybersquatting on the grounds that the evidence Groupion anticipates Groupon will rely on to demonstrate the bad faith element of that claim is inadmissible. However, whether Groupon eventually may be able to prove all of the elements of this claim is not at issue at this procedural stage. In order to defeat a motion to dismiss for failure to state a claim, Groupon must merely show that it has sufficiently *alleged* facts in support of the required elements. Groupion has not even argued that Groupon has failed to do so. Accordingly, the Court denies Groupion's motion to dismiss Groupon's counterclaim for cybersquatting.

Groupion also moves to dismiss Groupon's counterclaim for cancellation. Where, as here, a registration is based upon Section 44 of the Lanham Act, "the description of goods in the United States application cannot include goods which are not included in the description of goods in the foreign registration upon which the U.S. application is based." *Marmark, Ltd. v. Nutrexpa, S.A.*, 12 U.S.P.Q.2d 1843, 1845 (TTAB 1989). Because Section 44 is an exception to the normal registration procedures, the United States Patent and Trademark Office Trademark Trial and Appeal Board construes this section narrowly. *Id.* at 1845. In its counterclaim, Groupon seeks cancel Groupion's registration pursuant to Section 44 on the grounds that Groupion has claimed rights in connection with goods and services which are not claimed in its European trademark registration. (Counterclaim, ¶ 28.) Groupion contends that its United

1  States registration is actually more narrow, not broader, than its European registration. Upon
2  review of Groupion's registrations, the Court cannot find as a matter of law at this procedural
3  stage that Groupion's United States registration does not contain goods and services which are
4  broader and are not covered by the goods and services identified in Groupion's European
5  registration. Accordingly, the Court denies Groupion's motion to dismiss Groupon's
6  cancellation counterclaim.

**C.     Haider's Motion to Dismiss.**

       **1.     Personal Jurisdiction.**

Because Groupon's cybersquatting counterclaim against Haider is a tort, the Court will analyze whether Haider has purposefully directed his activities at Groupon in California based on the *Calder* "effects" test. *See Doe*, 248 F.3d at 924. Groupon argues that Mr. Haider personally registered the domain names at issue, which are identical or almost identical to Groupon's registered trademarks for GROUPON, GROUPONS, and GROUPONWORKS, and that he authorized Groupion to offer to sell these domain names to Groupon. The domain names Haider registered are group-on-works.com, group-on-works.de, group-ons.eu, group-ons.de, and group-on.eu. (Declaration of Jedediah Wakefield ("Wakefield Decl."), Ex. 2.) By such conduct, Groupon contends that Mr. Haider intentionally registered the domain names as part of a scheme to extort money from Groupon. If true, such conduct is sufficient to show intentional acts expressly aimed at and causing harm in California, where Groupon has offices and conducts business. *See Panavision Internat'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321-22 (9th Cir. 1998) (finding that purposefully registering the plaintiff's trademarks as his domain names on the internet in order to force the plaintiff to pay him money was sufficient to satisfy the effects test).

Haider does not dispute that he personally registered the domain names at issue. He seeks to portray himself as a passive, non-managing, minority investor in Groupion, and, thus, presumably not liable for Groupion's offer to sell the domain names. However, Haider co-founded Groupion in January 2011 and, along with co-founder Benjamin Coutu, acted as one of only two of the company's managing members. (Declaration of Peter-Christoph Haider in

7

United States District Court
For the Northern District of California

1  Support of Mot. ("Haider Decl.") ¶¶ 1, 4.) It is undisputed that Haider owns 46.5% of
2  Groupion, Benjamin Coutu owns 46.5%, and a third entity, Haider GmbH, owns the remaining
3  7%. While Haider was a managing member, Haider personally "authorized the filing of a
4  Petition for Cancellation with the Trademark Trial & Appeal Board" of Groupon's trademark
5  registration. (Haider Declaration in Support of Motion for Preliminary Injunction (Docket No.
6  32), ¶ 35.) Haider also authorized actions by Groupion in this litigation, including the filing of
7  the motion for preliminary injunction. (*Id.* at ¶ 51.) In June 2011, and then again in September
8  2011, while Haider was still a managing member, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
9  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (Wakefield Decl., Exs. 4-5.)[2]

10  Haider did not resign from being a managing member of Groupion until December 31,
11  2011, which was after the briefing on Groupon's motion to for leave to bring the counterclaims
12  against Haider was completed and after Haider was deposed regarding the alleged
13  cybersquatting. Haider cannot avoid jurisdiction by actions taken after the alleged tortious acts
14  were completed. *Cf. Steel v. United States*, 813 f.2d 1545, 1549-50 (9th Cir. 1987) (holding that
15  party could not defeat diversity jurisdiction by moving to another state).

16  Notably, Haider does not address, and thus fails to dispute, Groupon's argument that he
17  was, at the time of the alleged tortious acts, the "guiding spirit" or the "central figure" behind
18  Groupion's offer to sell the domain names. *See Davis v. Metro Prods., Inc.*, 885 F.2d 515, 524,
19  n.10 (9th Cir. 1989) (citing *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 907 (1st

---

[2] Groupion urges the Court to disregard the evidence of these offers pursuant to Federal Rule of Evidence 408 because they were made in connection with an offer to settle the then existing claims between the parties. However "Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim." *Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*, 111 F.3d 1284, 1293-94 (6th Cir. 1997) (citation omitted); *see also* Rule 408, advisory committee note, 2006 amendment ("The amendment retains the language of the original rule that bars compromise evidence only when offered as evidence of the 'validity,' 'invalidity,' or 'amount' of the disputed claim."). Groupon's cybersquatting claim was not a part of the settlement negotiations because it was not yet in existence. Moreover, Rule 408 is inapplicable to communications when they are admitted to prove a wrong that was committed in the course of settlement discussions. *Id.*; *see also Aamco Trans., Inc. v. Trovato*, 2011 WL 4549135, *5 (S.D. Cal. Sept. 28, 2011); Rule 408, advisory committee note, 2006 amendment (citing *Uforma/Shelby Bus. Forms*). Groupon alleges that Haider and Groupion wrongfully trafficked in the domain names at issue by offering to sell them to Groupon without any solicitation to do so. (Counterclaim, ¶ 17.) Therefore, the Court finds that Rule 408 does not bar the admission of this evidence.

8

1  Cir. 1980) ("Cases which have found personal liability on the part of corporate officers have
2  typically involved instances where the defendant was the 'guiding spirit' behind the wrongful
3  conduct, ... or the 'central figure' in the challenged corporate activity."). In the Ninth Circuit,
4  "[a] corporate officer or director is, in general, personally liable for all torts which he authorizes
5  or directs or in which he participates, notwithstanding that he acted as an agent of the
6  corporation and not on his own behalf." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768
7  F.2d 1001, 1021 (9th Cir. 1985) (internal quotation omitted). Resolving all factual disputes in
8  Groupon's favor for purposes of this motion, the Court finds that Groupon has made a prima
9  facie showing that Haider, as one of the two managing members of Groupion when the offers to
10 sell the domain names were made, and as a managing member who authorized litigation
11 activities in this action, ███████████████, may be held liable as the "guiding
12 spirit" behind Groupion's offers. Accordingly, the Court finds that Groupon has made a prima
13 facie showing that Haider purposefully directed  activities at residents of the forum state and
14 that Groupon's cyberquatting claim arises out of those activities.

15         Additionally, the Court finds that Groupion fails to demonstrate that the assertion of
16 personal jurisdiction would not be reasonable and fair. "For jurisdiction to be reasonable, it
17 must comport with fair play and substantial justice." *Bancroft & Masters*, 223 F.3d at 1088
18 (citing *Burger King*, 471 U.S. at 476). Groupion bears the burden to demonstrate a "compelling
19 case" of unreasonableness. *Id*. In analyzing the reasonableness of exercising specific
20 jurisdiction, the Court considers the following factors: "(1) the extent of the defendant's
21 purposeful interjection into the forum state, (2) the burden on the defendant in defending in the
22 forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum
23 state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the
24 controversy, (6) the importance of the forum to the plaintiff's interest in convenient and
25 effective relief, and (7) the existence of an alternative forum." *Id.*

26         The factor of purposeful interjection is analogous to the purposeful availment and
27 purposeful direction analysis. *Sinatra*, 854 F.2d at 1199. The Court has already found that
28 Groupon made a prima facie showing that Haider purposefully directed tortious activity at

9

Groupon in California. Ordinarily the unique burden of a foreign national defending oneself in a foreign legal system is given significant weight in assessing the reasonableness of exercising jurisdiction. *See Asahi Metal Indus. Co., Ltd. v. Sup. Ct.*, 480 U.S. 102, 114 (1987). However, here, Haider authorized the initiation of litigation against Groupon, and has participated in the litigation, in this district. Such conduct undermines Haider's argument regarding the significant burden he would incur by being forced to litigate the counterclaims in this Court. Moreover, the Court must examine the "burden on the defendant in light of the corresponding burden on the plaintiff." *Brand v. Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1986). Unless the inconvenience to the defendant is "so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Roth v. Marquez*, 942 F.2d 617, 623 (9th Cir. 1991). In light of the ongoing litigation between Groupon and Groupion in this Court, there is no indication that it would be more burdensome for Haider to litigate in California than it would be for Groupon to litigate its counterclaims in Germany. Therefore, Haider has not demonstrated that the burden on him to litigate the counterclaims in California is so great as to constitute a deprivation of due process.

Haider has not identified any conflict with the sovereignty of Germany. In terms of the forum state's interest in adjudicating the dispute, California has an interest in protecting companies which conduct business there. *Data Disc, Inc. v. Systems Tech. Ass'ns,* 557 F.2d 1280, 1288 (9th Cir.1977) ("California has an interest in providing a forum for companies doing business there."). Upon consideration of all of the factors, the Court finds that Haider fails to demonstrate a compelling case that the exercise of jurisdiction over him would be unreasonable. Accordingly, the Court denies his motion to dismiss for lack of personal jurisdiction.

**2.     Service of Process.**

Federal Rule of Civil Procedure 4(f)(1) authorizes service of process on an individual in a foreign country "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."

10

1  The Hague Service Convention is a multi-national treaty that governs service of
2  summons on persons in signatory foreign countries. *Volkswagenwerk Aktiengeschellschaft v.*
3  *Schlunk, et al.*, 486 U.S. 694, 698 (1988). Requests for service must conform to a model form
4  attached to the Hague Convention. *The Hague Convention*, art. 3, Nov. 15, 1965, 20 U.S.T.
5  361, T.I.A.S. 6638, 658 U.N.T.S. 163. The form, as well as all relevant documents, should be
6  sent "by the judicial officer or authority in the state in which the documents originate to the
7  designated central authority of the country in which the recipient is located." *Cippolla v.*
8  *Picard Porsche Audi, Inc.*, 496 A.2d 130, 131-132 (R.I. 1985); *see The Hague Convention*, art.
9  4, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163). "Once a central authority
10 receives a request in the proper form, it must serve the documents by a method prescribed by
11 the internal law of the receiving state or by a method designated by the requester and
12 compatible with that law. The central authority must then provide a certificate of service that
13 conforms to a specific model." *Schlunk*, 486 U.S. at 698; *see The Hague Convention* arts. 5-6,
14 Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163. The Hague Convention pre-
15 empts all state and federal service rules in those countries that signed the treaty. *See Schlunk*,
16 486 U.S. at 699 ("by virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-
17 empts inconsistent methods of service prescribed by state law in all cases to which it applies").

18  Groupon filed a proof of service and attached an affidavit of service by the designated
19 German Authority in Munich responsible for effectuating international service in accordance
20 with the Hague Convention. In his reply brief, Haider does not contest the authenticity of the
21 proof of service or otherwise challenge Groupon's argument and supporting evidence that it
22 complied with the Hague Convention in serving Haider. In fact, in his reply, Haider does not
23 even address his motion to dismiss based on lack of service in any manner. Accordingly, the
24 Court finds that Haider has not shown that Groupon failed to serve him in accordance with Rule
25 4(f)(1) and the Hague Convention and, thus, denies his motion to dismiss on this ground.
26 ///
27 ///
28 ///

**CONCLUSION**

For the forgoing reasons, the Court denies Groupion's and Haider's motions to dismiss.

**IT IS SO ORDERED.**

Dated: June 5, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE